**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| NORMAN IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No.  6:13-cv-390 |
| | § | |
| v. | § | |
| | § | **Jury Trial Demanded** |
| DISH NETWORK L.L.C., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORIGINAL COMPLAINT

Norman IP Holdings, LLC ("Norman"), by and through its attorneys, for its Original

Complaint against DISH Network L.L.C. ("DISH" or "Defendant"), hereby alleges as follows:

### I.       NATURE OF THE ACTION

1.       This is a patent infringement action to end Defendant's unauthorized and

infringing manufacture, use, sale, offering for sale, and/or importation of methods and products

incorporating Plaintiff Norman's patented inventions.

2.       Norman is owner of all right, title, and interest in and to:  United States Patent No.

5,530,597 (the "'597 Patent"), issued on June 25, 1996, for "Apparatus and Method for

Disabling Interrupt Masks in Processors or the Like"; United States Patent No. 5,502,689 (the

"'689 Patent"), issued March 26, 1996, for "Clock Generator Capable of Shut-Down Mode and

Clock Generation Method"; United States Patent No. 5,592,555 (the "'555 Patent"), issued

January 7, 1997, for "Wireless Communications Privacy Method and System"; United States

Patent No. 5,608,873 (the "'873 Patent"), issued March 4, 1997, for "Device and Method for

Interprocessor Communication Using Mailboxes Owned by Processor Devices"; and  United

States Patent No. 5,771,394 (the "'394 Patent"), issued June 23, 1998, for "Apparatus Having Signal Processors for Providing Respective Signals to Master Processor to Notify that Newly Written Data can be Obtained from One or More Memories" (collectively, the "Patents"). True and correct copies of the Patents are attached hereto as Exhibits 1–5.

3. Defendant manufactures, provides, sells, offers for sale, imports, and/or distributes infringing products and services; and/or induces others to make and use its products and services in an infringing manner; and/or contributes to the making and use of infringing products and services by others, including their customers, who directly infringe the Patents.

4. Plaintiff Norman seeks injunctive relief to prevent Defendant from continuing infringement of Plaintiff's valuable patent rights. Plaintiff Norman further seeks monetary damages and prejudgment interest for Defendant's past infringement of the Patents.

5. This is an exceptional case, and Norman is entitled to damages, enhanced damages, attorneys' fees, costs, and expenses.

## II.    THE PARTIES

6. Plaintiff Norman is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 100 E. Ferguson, Suite 900, Tyler, Texas 75702.

7. Upon information and belief, Defendant DISH Network L.L.C. is a Nevada corporation with its principal place of business located at 9601 S. Meridian Blvd., Englewood, Colorado 80112. Upon information and belief, DISH Network is authorized to do business in Texas and can be served with process by serving its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

ORIGINAL COMPLAINT

### III.   JURISDICTION AND VENUE

8.     This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

9.     This Court has personal jurisdiction over Defendant, and venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400.

### IV.   PLAINTIFF'S PATENTS

10.     The '597 Patent discloses an interrupt enable circuit to enable and disable the interrupt at any time except under certain conditions, at which time the system can override the interrupt mask.  Electronic devices practicing the inventions claimed in the '597 Patent can exit certain processes or states without using a hardware reset and thus protect against unnecessary information loss.  Further, through the use of the inventions claimed in the '597 Patent, such electronic devices can prevent situations where the processor is locked in a certain state because all interrupts were masked by software when the processor entered such state.

11.     The '689 Patent discloses a clock generator and interrupt bypass circuit for use in reducing the power consumption of the electrical system in which they are implemented.  The clock generator may provide module clock signals for sequencing modules within the same electrical system, and is capable of generating those module clock signals when in an active mode, and of not generating those module clock signals when in a stand-by mode.  The clock generator is further capable of providing a delay of a predetermined length from a request to enter shut-down mode to actual entry into shut-down mode, allowing time to prepare the electrical system for shut-down mode.  The interrupt bypass circuit may provide a means of leaving shut-down mode in the event that the relevant interrupt requests have been masked.

12.     The '555 Patent discloses a system and method for processing and securing communication signals over a wireless communications network.  An enciphering algorithm may be programmatically selected and applied to the signals for secure transmission.

13.     The '873 Patent discloses a device and method for providing inter-processor communication in a multi-processor architecture.  A post office RAM has a plurality of mailboxes.  Each mailbox is write accessible by one port, but is read-accessible by the other ports.  Thus, a processor device on a port has write-access to one mailbox, but can read the other mailboxes in the post office.  A transmitting processor communicates with a receiving processor, by utilizing the post office.  The transmitting processor writes information into its own mailbox, and signals a receiving processor.  The receiving processor determines which of the processor devices signaled it, and reads the information in the transmitting processor's mailbox.

14.     The '394 Patent discloses a servo loop control apparatus having a master microprocessor and at least one autonomous streamlined signal processor is disclosed.  The architecture provides a general purpose controller for use in systems where intensive servo signal processing is required and is well suited to applications where multiple servo control loops operate simultaneously.  The operation of the streamlined signal processors is autonomous from the master processor so that critical functions can be dedicated to the streamlined signal processors.  This eliminates complex interrupt management and tedious real time scheduling constraints, simplifies system design and improves system performance.  The architecture provides an integrated mechanism for implementing multiple, concurrent, complex signal processing and embedded control functions, such as complete servo-mechanism management for high performance disk storage systems.

15.     Norman has obtained all substantial right and interest to the Patents, including all

rights to recover for all past and future infringements thereof.

## V.     LICENSING RELATED TO THE PATENTS

16.     On February 1, 2010, Saxon Innovations, LLC ("Saxon") assigned to Norman IP Holdings LLC all right, title, and interest in the Patents.

17.     Norman's business includes acquisition and licensing of intellectual property.  In that regard, Norman and its predecessors in interest have licensed the Patents to dozens of Fortune 500 companies, directly and indirectly.   Norman has also entered into numerous settlement agreements in connection with litigation in the Eastern District of Texas and in the International Trade Court.

## VI.     DEFENDANT'S ACTS

18.     DISH manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing DISH systems include, for example, the chipsets for DVR systems and whole home systems (for example, Broadcom BCM7038 containing at least a MIPS64 processor core(s), Broadcom BCM7320 containing at least MIPS R5K processing core(s), Broadcom BCM7328 containing at least MIPS R5K processing core(s), Broadcom BCM7340 containing at least MIPS32 and MIPS34K processing core(s), Broadcom BCM7400-series containing at least MIPS32 and MIPS34K processing core(s), Broadcom BCM7401 containing at least MIPS4K processing core(s), Broadcom BCM7425 containing at least MIPS32 and MIPS34K processing core(s), Marvell 88i6545 containing at least XScale/Feroceon processing core(s), LSI Logic 869002V0 containing at least ARM966 processing core(s), and Agere Beagle E5-D4 containing at least ARM processing core(s); with respect to specific DISH DVR systems and whole home systems, non-limiting examples include: Duo 322 incorporating at least BCM7328 and TH71101

chipsets; Solo VIP211K incorporating at least BCM7401, INT5200, BCM3520, and BCM4500 chipsets; Duo ViP222K incorporating at least BCM7400, INT5200, ZA050066, BCM4500, and TH71101 chipsets; Solo 512 incorporating at least BCM7320 and 88SA8040 chipsets; Duo 625 incorporating at least BCM7320, Beagle E5-D4, and BCM4500 chipsets; Solo ViP612 incorporating at least STi7109, INT5200, 88i6545, CX24114, USB2500, and SMSC8700C chipsets; DuoDVR ViP 722K incorporating at least BCM7400, INT5200, BCM4500, and 73M1093 chipsets; Hopper incorporating at least BCM7425, BCM53101, LSI 869002V0, BCM4516, BCM43236, and SC13213A chipsets; Joey incorporating at least BCM7340 and SC13213A chipsets; and Solo ViP 622 incorporating at least BCM7038), IEEE 802.11-compliant chipsets (for example, those found in set top boxes, *e.g.*, Broadcom BCM43236 Intensi-fi XLR Media Family WiFi chipset in HD Hopper with Sling which include ARM Cortex-M cores), IEEE 802.15.4-compliant Zigbee chipsets (for example, Freescale SC13213A and Freescale MC13202—which contain at least HCS08 core(s)—and are found within remotes for Hopper, Joey, and potentially other DISH devices), processors found within 802.11-compliant and IEEE 802.15.4-compliant Zigbee chipsets (for example, ARM Cortex processors embedded within certain Broadcom WiFi and Freescale Zigbee chipsets), and similar products.

19.    With knowledge of the Patents, DISH provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

20.    The foregoing infringing products include embedded processors.  DISH specifies use of processors having certain power consumption and memory utilization characteristics.  The subject processors are designed and manufactured to operate in a manner which reduces power consumption and streamlines memory utilization and infringes the '689 Patent, '597 Patent, '873

Patent and '394 Patent.  DISH installs those processors so as to operate in an infringing manner. The infringing systems have no substantial non-infringing uses.

21.     With respect to the '555 Patent, DISH intentionally implements relevant provisions of the IEEE 802.11 specification.  DISH specifies wireless controllers that are compliant with IEEE 802.11.  The subject controllers are designed and manufactured to operate in a manner which infringes the '555 Patent during normal operation.  DISH installs those controllers so as to operate in an infringing manner.   The infringing controllers have no substantial non-infringing uses.

22.     DISH has had knowledge of the Patents at least since its having been served with the Second Amended Complaint in *Norman IP Holdings LLC v. Lexmark Int'l et al.*, Civil Action No. 6:11-cv-495-LED, filed January 27, 2012 (Doc. No. 15).

23.     With knowledge of the Patents, DISH has provided and continues to provide related services, specifications, and instructions for the installation and infringing operation of such systems to the customers of its DVR systems and whole home systems, who directly infringe through the operation of those systems.

24.     With knowledge of the Patents, DISH has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

25.     Through its actions, DISH has infringed the Patents and actively induced others to infringe and contributed to the infringement by others of the '555 Patent throughout the United States.

26.     Norman has been and will continue to suffer damages as a result of Defendant DISH's infringing acts unless and until enjoined.

ORIGINAL COMPLAINT

## VII.   WILLFULNESS

27.     Plaintiff Norman alleges upon information and belief that Defendant DISH has knowingly or with reckless disregard willfully infringed the Patents.  Defendant was been provided written notice of infringement of the Patents.  Defendant acted with knowledge of the Patents and despite an objectively high likelihood that their actions constituted infringement of Norman's valid patent rights.

28.     This objectively-defined risk was either known or so obvious that it should have been known to Defendant.  Norman seeks enhanced damages pursuant to 35 U.S.C. § 284.

## COUNT ONE
## PATENT INFRINGEMENT—U.S. PATENT NO.  5,530,597

29.     Plaintiff Norman realleges and incorporates herein paragraphs 1–28.

30.     Defendant has infringed the '597 Patent.

31.     Defendant has indirectly infringed the '597 Patent by inducing the infringement of the '597 Patent and contributing to the infringement of the '597 Patent.

32.     Upon information and belief, Defendant has jointly infringed the '597 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

33.     Defendant's aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT TWO
## PATENT INFRINGEMENT—U.S. PATENT NO.  5,502,689

34.     Plaintiff Norman realleges and incorporates herein paragraphs 1–28.

35.     Defendant has infringed the '689 Patent.

36.     Defendant has indirectly infringed the '689 Patent by inducing the infringement of the '689 Patent and contributing to the infringement of the '689 Patent.

37.     Upon information and belief, Defendant has jointly infringed the '689 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

38.     Defendant's aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT THREE
## PATENT INFRINGEMENT—U.S. PATENT NO.  5,592,555

39.     Plaintiff Norman realleges and incorporates herein paragraphs 1–28.

40.     Defendant has infringed the '555 Patent.

41.     Defendant has indirectly infringed the '555 Patent by inducing the infringement of the '555 Patent and contributing to the infringement of the '555 Patent.

42.     Upon information and belief, Defendant has jointly infringed the '555 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

43.     Defendant's aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT FOUR
### PATENT INFRINGEMENT—U.S. PATENT NO.  5,608,873

44.     Plaintiff Norman realleges and incorporates herein paragraphs 1–28.

45.     Defendant has infringed the '873 Patent.

46.     Defendant has indirectly infringed the '873 Patent by inducing the infringement of the '689 Patent and contributing to the infringement of the '873 Patent.

47.     Upon information and belief, the Defendant jointly infringed the '873 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

48.     The Defendant's aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT FIVE
### PATENT INFRINGEMENT—U.S. PATENT NO.  5,771,394

49.     Plaintiff Norman realleges and incorporates herein paragraphs 1–28.

50.     Defendant has infringed the '394 Patent.

51.     Defendant has indirectly infringed the '394 Patent by inducing the infringement of the '689 Patent and contributing to the infringement of the '394 Patent.

52.     Upon information and belief, the Defendant has jointly infringed the '394 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

53.     The Defendant's aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## VII.    JURY DEMAND

54.    Plaintiff Norman hereby demands a jury on all issues so triable.


## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff Norman respectfully requests that the Court:

A.    Enter judgment that Defendant infringes one or more claims of the Patents literally and/or under the doctrine of equivalents;

B.    Permanently enjoin Defendant, its agents, servants, and employees, and all those in privity with Defendant or in active concert and participation with Defendant, from engaging in acts of infringement of the Patents;

C.    Award Plaintiff Norman past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D.    Declare this case exceptional pursuant to 35 U.S.C. §285; and

E.    Award Plaintiff Norman its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Respectfully submitted,

Dated:  May 10, 2013                    By: /s/ Andrew G. DiNovo
                                        Andrew G.  DiNovo
                                        Texas State Bar No. 00790594
                                        Adam G. Price
                                        Texas State Bar No. 24027750
                                        Chester J. Shiu
                                        Texas State Bar No. 24071126
                                        **DiNovo Price Ellwanger & Hardy LLP**
                                        7000 N.  MoPac Expressway, Suite 350
                                        Austin, Texas  78731
                                        Telephone:  (512) 539-2626
                                        Telecopier:  (512) 539-2627

ORIGINAL COMPLAINT